**VIRGIN ISLANDS GOVERNMENT HOSPITALS AND HEALTH FACILITIES CORPORATION, St. Thomas/St. John District Governing Board of the Roy Lester Schneider Hospital, Petitioner**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, DEPARTMENT OF HEALTH; DARLENE A. CARTY, Commissioner of Health; and ST. THOMAS AMBULATORY SURGICAL CENTER, LLC, Respondents**

Civil No. 006/2005

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

June 30, 2006

HENRY L. FEUERZEIG, ESQ., Dudley, Topper and Feuerzeig, LLP, St. Thomas, VI, *Attorney for Petitioner*.

DOUGLAS JUERGENS, ESQ., V.I. Department of Justice, St. Thomas, VI, *Attorney for Respondent Government of the Virgin Islands Department of Health and Honorable Darlene A. Carty, Commissioner of Health*.

JOSEPH B. ARELLANO, ESQ., Arellano & Associates, DEREK M. HODGE, ESQ., Mackay & Hodge, LLC, DAVID A. BORNN, ESQ., The Bornn Firm, LLC, St. Thomas, VI, *Attorneys for Respondent St. Thomas Ambulatory Surgical Center, LLC*.

CABRET, *Judge*

## MEMORANDUM OPINION

(June 30, 2006)

THIS MATTER is before the Court on a Petition for Writ of Review filed by the Virgin Islands Government Hospitals and Health Facilities Corporation, St. Thomas/St. John District Governing Board of the Roy

Lester Schneider Hospital [hereinafter "the Board" or "Petitioner"] and a Motion to Dismiss Petitioner's Writ of Review, filed by Respondents Government of the Virgin Islands Department of Health, Commissioner of Health Darlene A. Carty, and St. Thomas Ambulatory Surgical Center, LLC [hereinafter "Respondents"]. The Court heard oral arguments on September 16, 2005. Subsequently, Respondents and Petitioner were permitted to supplement the record. For the reasons that follow, the Court will deny the Board's Petition for Writ of Review and grant Respondents' Motion to Dismiss.

## I. Factual and procedural Background

On or about December 11, 2003, Respondent St. Thomas Ambulatory Surgical Center, LLC [hereinafter "ASC"] filed an application for a certificate of need [hereinafter "CON"] with the Commissioner of Health, seeking to open an outpatient surgical facility on the island of St. Thomas. A CON, the culmination of a regulatory oversight process, is required any time an entity seeks to "establish, construct, or expand a health facility or health service, or incur capital expenditure on behalf of a health facility or health service, or acquire major medical equipment in the Virgin Islands," that may address an unmet medical need specific to a geographic area. V.I. CODE ANN. tit. 19, § 223 (1998). When an entity has satisfied the requirements, the Commissioner of Health may issue a CON.

ASC's application was deemed complete on June 21, 2004, triggering the commencement of a review process. The Commissioner accepted public comments until June 30, 2004. Thereafter, the Commissioner established an Ad-Hoc CON Review Committee [hereinafter "Committee"] to whom she delegated the consideration of ASC's pending application. Between July and October 2004, Amos Carty, Jr., Chief Operating Officer and General Counsel for the Roy Lester Schneider Hospital and Keith Callwood, a Regulatory Compliance Officer for the Department of Health associated with the Committee, communicated by telephone and written correspondence concerning the Hospital's elective surgery capabilities. On September 1, 2004, Respondent Commissioner Carty invited, by letter, representatives of the Roy Lester Schneider Hospital, including Rodney E. Miller Sr., the Chief Executive Officer, [hereinafter "CEO"] to a September 10, 2004 meeting of the Committee. At the meeting, CEO Miller detailed the adverse economic impact of the

proposed ASC facility on the Hospital. ASC made a corresponding presentation to the Committee at a meeting on October 6, 2004, and on October 18, 2004, the Committee recommended that the Commissioner grant a conditional CON to the ASC.

On November 24, 2004, Respondent Commissioner Carty adopted the recommendations of the Committee. Despite repeated requests by the Petitioner, the Commissioner did not send a copy of her decision to Petitioner until December 21, 2004,[1] who received it on December 22, 2004. The Board filed a Petition for Writ of Review on January 11, 2005, invoking both Superior Court Rule 15 and sections 1421 to 1423 of title 5 of the Virgin Islands Code as the basis for this Court's appellate jurisdiction. The Board seeks the following relief:

> (i) to vacat[e] and set[] aside the Commissioner's decision of November 26, 2004, and (ii) declar[e] that the Commissioner of Health may not accept an application for an ambulatory surgical facility or act on any such application until rules and regulations are promulgated in accordance with 19 V.I.C. ch. 15 and pursuant to 3 V.I.C. §§ 911-961.

(Pet. for Writ of Review at 10-11.)

In their Motion to Dismiss, Respondents articulate a myriad[2] of bases

---

[1] In the instant Petition, Petitioner details the great pains it endured to collect the documents relevant to this action. Superior Court Rule 15 provides that a petition must be "filed within 30 days after the date of the decision." SUPER. CT. R. 15. Though Respondents argue that this petition is untimely, and thus jurisdiction is barred on these procedural grounds, there is ample authority that supports an allowance for a purportedly late filing where a litigant's counsel fails to receive notice until sometime after a decision is made. See Tip Top Constr., Inc. v. Dep't of Prop. & Procurement, 41 V.I. 72, 74 (Terr. Ct. 1999); In re Hodge, 16 V.I. 548, 555 (Terr. Ct. 1979). Thus, this action will not be dismissed for being untimely. It would be a perverse result if Respondents could manufacture a basis for dismissal of this action by denying Petitioner's timely requests for the relevant documents and thereby procedurally bar this action.

[2] Alternatively, Respondents assert that the following bases support dismissal. First, Respondents claim that Petitioner lacks the capacity to sue because it was not delegated the authority to commence, maintain and prosecute this suit. Respondents insist this ultra vires activity extends to the hiring and retention of outside counsel. Next, they contend that Petitioner failed to comply with its own by-laws prescribing the means for bringing suit. Then, Respondents argue that Petitioner may not sue other governmental entities, including two of the Respondents, as it is their alter-ego. Respondents also posit that this is a non-justiciable political question. Finally, Respondents maintain that all equitable relief sought in this Petition is precluded by the doctrine of unclean hands. Since

that purportedly support dismissal. Among them, Respondents claim that Petitioner lacks statutory standing under both chapter 15 of title 19, *Licensing, Inspection and Regulation of Health Facilities and Health Services,* and chapter 97 of title 5, *Writ of Review,* because it was not a *party* to the proceedings. According to Respondents, only an aggrieved CON applicant, the only *party* to a CON proceeding, has standing to seek judicial review in section 227[3] of chapter 15 of title 19. Consequently, Respondents argue that the Virgin Islands Writ of Review Chapter, sections 1421 to 1423 of title 5, must be construed within the context of the limited definition of party contained in chapter 15; they contend that Virgin Islands Writ of Review Chapter does not confer standing to *aggrieved persons,* even if the Board qualifies as such, unless such aggrieved persons were also *parties* to the underlying proceeding before the Commissioner of Health.

In its Opposition, Petitioner concedes it does not have statutory standing under title 19,[4] but counters that standing exists through a broad construction of chapter 97 of title 5 with Superior Court Rule 15 and Article III of the Constitution. (Pet'r's Mem. in Opp'n to Resp.'s Mot. to Dismiss at 42-43 citing *Equity Inv. Corp. v. Gov't of Virgin Islands,* 19 V.I. 180, 182 (D.V.I. 1982) (citing *Simmon v. Christian,* 12 V.I. 307, 309 (D.V.I. 1975) for the proposition that chapter 97 should be construed broadly); *Gov't of the Virgin Islands, v. United Indus. Workers of N. Am.,* 38 V.I. 170, 987 F. Supp. 439 (D.V.I. App. Div. 1997) (same); *Kramer v. Gov't of the Virgin Islands,* 8 V.I. 449, 453 F.2d 1246 (3d Cir. 1971)

Respondents' jurisdictional basis is dispositive, the Court does not reach any of these other grounds.

[3] A direct appeal from the refusal to issue, the suspension of, or the revocation of a CON is furnished to *any party* to the proceedings. V.I. CODE ANN. tit. 19, §§ 226, 227 (1995). Respondents argue that even if Petitioner sought a direct appeal under title 19, the definition of *party* in section 227 excludes Petitioner since it is not an applicant; section 227, by the reference to section 226 proceedings, suggests that only applicants may directly appeal within the CON framework. There is no mention of standing for non-applicants, like Petitioner, even if aggrieved, to appeal the grant of a CON in either section 226 or section 227.

[4] Petitioner does not seek an appeal through this traditional vehicle or challenge the decision on substantive grounds. (Pet'r's Mem. in Opp'n to Resp.'s Mot. to Dismiss at 15.) Instead, it argues under chapter 97 of title 5 it is entitled to a writ of review; Petitioner argues the failure to promulgate rules and regulations, or even adhere to proposed rules, makes the Commissioner's decision to grant a CON to ASC arbitrary and capricious as a matter of law. (*Id.*)

(defining party in section 1421 of title 5 unhelpfully "as those who may appeal").) Specifically, Petitioner claims, citing *Donastorg v. Gov't of the Virgin Islands*, 45 V.I. 259, 267 (Terr. Ct. 2003),[5] that it satisfies the requirements of constitutional Article III standing, namely, "(1) a concrete injury in fact; (2) [causal] connection between the alleged injury in fact and the alleged conduct of the defendant; and (3) a substantial likelihood that the requested relief will remedy the alleged injury in fact." According to Petitioner, absent a statutory conferral of standing under title 19, constitutional standing suffices where an entity challenges a purported failure to comply with the statutory scheme. To that end, Petitioner identifies the Commissioner of Health's purported failure to comply with the National Health Services Act,[6] the basis for Virgin Islands CON laws, as evidence that the Commissioner's actions were inconsistent with the legislative intent of title 19.

At oral arguments, after being queried about statutory standing, Petitioner argued that through its participation by Rodney E. Miller, Sr. at the September 10, 2004 meeting, it had statutory standing under chapter 97 of title 5 as a *party* to the proceedings because the Commissioner formally requested input from Mr. Miller. In the alternative, Petitioner argued that Superior Court Rule 15 provides that

---

[5] Petitioner also relies on the principles of prudential standing to claim that as an existing entrepreneur it has standing, absent an express statutory grant, to challenge the market entry of a competitor. *See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 157 (1970). Petitioner's arguments concerning its prudential standing as a competitor affected by a market entry must fail. This Court's subject matter jurisdiction is limited by the Revised Organic Act and the Code. *In re Hodge*, 16 V.I. at 551-52. The Court cannot increase its jurisdiction to hear administrative reviews, even if it were prudent in the instant matter.

[6] According to Petitioner, the National Health Services Act which encouraged the development of local health resource planning attempted to solve the "maldistribution of health care facilities and manpower." (Pet'r's Mem. in Opp'n to Resp.'s Mot. to Dismiss at 26.) The CON process was a product of this legislation, requiring the regulation of health facilities based on need. (*Id.* at 27.) This process was to follow certain published criteria and procedures and the Commissioner of Health's purported failure to promulgate and publish these criteria and procedures under section 225 of title 19 frustrated this purpose. (*Id.* at 28.) Finally, Petitioner claims that there was insufficient public input in the decision-making process. Accordingly, Petitioner claims that the failure of the Commissioner of Health to conduct public hearings according to promulgated rules and regulations violated section 225 of title 19 and thus supplies standing under chapter 97 of title 5.

writs of review may be allowed to *aggrieved persons*, and since courts in this jurisdiction previously read the Writ of Review Chapter as a broadly drafted remedial device, it instead may be read to confer standing to the Petitioner consistent with this spirit of broad construction.

 Ultimately, Petitioner and Respondents dispute whether a non-applicant has standing to challenge the Commissioner of Health's issuance of a CON. Statutorily-provided appeals and writs of review are the only types of controversies where the Superior Court has jurisdiction to sit in an appellate capacity. *See In re Hodge*, 16 V.I. 548, 551-52 (Terr. Ct. 1979) (providing that jurisdiction for appeals must be granted by the Revised Organic Act or statute). Thus, if a particular appellate controversy does not fall within a statutory ground for appeal or qualify for a writ of review, this Court lacks jurisdiction over that subject matter. This Court also lacks subject matter jurisdiction over a dispute if a party lacks standing, as standing is a component of subject matter jurisdiction. *RJG Cab, Inc. v. Hodel*, 797 F.2d 111 (3d Cir. 1986). Because the Petitioner lacks standing under the Virgin Islands Writ of Review Chapter, sections 1421 to 1423 of title 5, the Court will dismiss this action for a lack of subject matter jurisdiction.

### III. DISCUSSION

Whether Petitioner has standing to challenge the Commissioner of Health's grant of a CON to ASC concerns the scope of the Virgin Islands Writ of Review Chapter, sections 1421 to 1423 of title 5, and whether it should be read expansively in conjunction Superior Court Rule 15 to supply standing to the Petitioner.[7] Section 1421 reads:

> *Any party* to any proceeding before or by any officer, board, commission, authority, or tribunal may have the decision or determination thereof *reviewed for errors therein as prescribed in this chapter and rules of court.* Upon the review, the court may review any intermediate order involving the merits necessarily affecting the decision or determination sought to be reviewed.

5 V.I.C. § 1421 (emphasis added). Section 1422 lists the limited grounds on which courts may grant a writ of review. It provides that:

---

[7] Superior Court Rule 15 is nearly identical to the former Rule 11 of the Rules of the District Court of the Virgin Islands, promulgated on May 28, 1957. V.I. CODE ANN. tit. 5, App. V, R. 11 (1982).

> [t]he writ of review shall be allowed in all cases *where there is no appeal or other plain, speedy, and adequate remedy*, and where the officer, board, commission, authority, or tribunal in the exercise of his or its functions appears to have *exercised such functions erroneously*, or to *have exceeded his or its jurisdiction*, to the *injury of some substantial right of the plaintiff.*

5 V.I.C. § 1422 (emphasis added). Finally, Superior Court Rule 15(a) supplies the procedure for writs of review, stating in relevant part:

> A writ of review may be granted by the Court upon the petition of *any person aggrieved* by the decision or determination of an officer, board, commission, authority or tribunal. Such petition shall be filed within 30 days after the date of the decision or determination complained of and shall recite such decision or determination and set forth the errors alleged to have been committed therein. The petition shall be signed by the petitioner or his attorney, and shall be accompanied by the certificate of the attorney that he has examined the process or proceeding and the decision or determination therein sought to be reviewed, that the same is in his opinion erroneous and that the petition is not filed for delay.

SUPER. CT. R. 15(a) (emphasis added). A cursory review of section 1421 and Rule 15 reveals that the presumptive scope for the respective provisions is different; section 1421 grants standing to aggrieved *parties*, while Rule 15 concerns the procedure for petitions submitted by aggrieved *persons*. Thus, the question of standing will depend on (1) whether the Board is an aggrieved *party* within the meaning of section 1421; or (2) if not, whether the Board is an aggrieved *person* and Rule 15 may be read to expand the scope section 1421.

## A. Alleging a Violation of a Statute Along with Establishing Constitutional Standing Does Not Suffice for the Satisfaction of Statutory Standing

Petitioner contends that contesting a violation of a statute in conjunction with satisfying the requirements of Article III Constitutional

standing[8] under the test articulated in *Sierra Club v. Morton*, 405 U.S. 727 (1972) suffices to establish standing to challenge the issuance of a CON to ASC. Specifically, Petitioner argues, citing *Donastorg*, 45 V.I. at 269 and *Environmental Association of St. Thomas and St. John v. Department of Planning and Natural Resources*, 44 V.I. 218 (Terr. Ct. 2002), that "even a person who does not have statutory standing, nonetheless, may have standing if the violation of the particular statute is the basis for their complaint and they are able [to] meet the *Sierra Club* standing test." (Pet'r Mem. in Opp'n to Resp. Mot. to Dismiss at 24.) Respondents distinguish these cases by asserting that such cases "were initiated within the *original* jurisdiction of the Court; this, by contrast, as Petitioner recognizes (Opp. at 15) is an *appellate* proceeding." (Resp.'s Reply to Pet'r Mem. in Opp'n to Resp. Mot. to Dismiss at 13 n.15.) Respondents also claim that even if those cases are applicable, they concern "standing only in the *absence* of a statutory conferral of standing." (*Id.*) Respondents posit that section 227 of title 19 and section 1421 of title 5 are statutory standing provisions, and that Petitioner must satisfy either basis for statutory standing to challenge the grant of a CON to ASC.

To begin, the existence of express statutory standing requirements differentiates this matter from the one considered in the *Environmental Association of St. Thomas and St. John*, 44 V.I. at 224-30. *Environmental Association of St. Thomas and St. John* concerned the rezoning of several parcels of land on the island of St. Thomas. Landowners impacted by the purportedly unlawful rezoning enactment established standing, where there were no express statutory standing provisions, by satisfying the Article III standing requirements. *Id.* at 230-31. Unlike the circumstances in *Environmental Association of St. Thomas and St. John*, here there are statutory standing requirements in section 227 of title 19 and section 1421 of title 5 and Petitioner must satisfy either[9] of these statutory

---

[8] In its discretion, the Superior Court has adopted the case and controversy requirement found in Article III of the United States Constitution as a part of its jurisprudence, although it does not expressly apply to the this Court. *Donastorg*, 45 V.I. at 269; *C & C/Manhattan v. Gov't of Virgin Islands et al.*, 46 V.I. 377, 383 (D.V.I. App. Div. 2004) (citing *Donastorg* approvingly).

[9] The Court assumes for the purposes of this discussion that chapter 97 of title 5 would permit standing to a challenger of grant of a CON who qualifies under its provisions.

standing provisions to challenge the grant of a CON to ASC. Additionally, *Donastorg,* also cited by Petitioner, did not hold otherwise; in *Donastorg* a taxpayer invoked the taxpayer standing provision, section 80 of title 5, and in recognizing the plaintiff's standing, the court emphasized that the only inquiry was statutory standing, not constitutional standing.[10] *Donastorg,* 45 V.I. at 269-70. In situations where the Legislature has granted standing beyond the limitations of Article III, as with taxpayer standing, the statutory standing requirements are the only concern. *Id.* It follows from *Donastorg* then, that the Court cannot disregard the limitations imposed by the statutory standing provisions.

██ Since Petitioner does not seek a direct appeal under chapter 15 of title 19, the statutory standing requirements for this action are found in chapter 97 of title 5. *See* 5 V.I.C. §1421-22. The statutory standing requirements that a "party" sustain "an injury of some substantial right" as a result of a "decision or determination thereof" of "any officer, board, commission, or authority or tribunal," are terms not specifically defined in the Virgin Islands Code. Accordingly, the standing requirements derived from Article III of the Constitution may assist in defining some of these relevant statutory standing requirements including whether there was an "injury of some substantial right of the plaintiff," and whether that "decision or determination thereof" was the source of that injury. *See* 5 V.I.C. §§ 1421-22; *see e.g., Gen. Instrument Corp. of Del. v. Nu-Tek Elecs. & Mfg., Inc.,* 197 F.3d 83, 88 (3d Cir. 1999) (providing a "party who fulfilled the injury-in-fact prong of the constitutional standing requirements would also be a 'person aggrieved'" under the relevant federal statute) (citations omitted). In *General Instrument Corp. of*

---

[10] Notably, the Virgin Islands is not alone in concluding that the satisfaction of Article III standing, even where the violation of a statute is alleged, will not suffice where there are statutory requirements for challenging specific administrative decisions. *See Sierra Club v. Hawaii Tourism Auth. ex rel. Bd. of Dirs.,* 59 P.3d 877, 897 (Haw. 2002) (where a statute authorizes judicial review to aggrieved parties under certain circumstances, "the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff") (citations omitted). In a CON context, the statutory standing requirements should be the initial inquiry. *See Bradbury Mem'l Nursing Home v. Tall Pines Manor Assocs.,* 485 A.2d 634, 638-39 (Me. 1984) (challenger to CON determination in Maine must satisfy both statutory and particularized-injury standing requirements).

*Delaware*, the Third Circuit Court of Appeals sanctioned the use of the Article III injury-in-fact standard to determine whether a litigant was aggrieved for purposes of establishing statutory standing. 197 F.3d at 88. Likewise, employing the Article III requirements in the instant matter can aid in establishing whether a party sustained an "injury of some substantial right" "by a decision." The Article III standing requirements, however, do not assist in defining who is a party under the *Writ of Review* Chapter, as not everyone who sustains an injury to a substantial right by a decision is a party. Thus, without commenting on the Petitioner's satisfaction of the *Sierra Club* test, the Court concludes that statutory standing requirements, *inter alia*, that the Petitioner was a *party* to the proceedings before the Commissioner of Health, must be satisfied. The Court will now consider whether Petitioner qualifies as a party.

## C. The Board is Not a Party within the Meaning of Section 1421*

Petitioner challenges the issuance of the CON under section 1421 of title 5 of the Virgin Islands Code, asserting that it has standing as a party to the proceedings before the Commissioner Carty. Petitioner's contention is premised on its participation at a September 10, 2004 meeting of the Committee entrusted with considering ASC's application for a CON. Specifically, Petitioner contends that CEO Miller appeared as a presenter at that meeting and thus, the Board, by extension, was a party to the proceedings, as contemplated by section 1421. Petitioner also highlights the conditions placed on the CON relating to the Hospital: Respondent ASC needed to submit an emergency plan, including an agreement with the Roy Lester Schneider Hospital that ensured all ASC physicians would have admitting privileges. On the strength of these imposed conditions, Petitioner seemingly argues that its status as a participant was somehow elevated to that of a party. Respondents insist that the terms *any party to any proceeding* in section 1421 of title 5 must necessarily be defined by reference to those proceedings, the CON process under title 19 of the Virgin Islands Code, sections 226 and 227. They contend that the language *any party to the proceeding* from section 227, and correspondingly the language from section 1421, refer to applicants only.

---

* *Editor's note:* The original case does not have a subsection B, but has two subsections labeled C.

To accept Petitioner's argument, the Court would have to determine that *party* should be read to include mere participants at meetings. Nowhere in the Code, rules, or precedent is the term *party* defined. Declaring participants to be parties without an express statutory directive might overwhelm the administrative state, widening the pool of eligible appellate challengers to agency determinations. It defies common sense and logic to conclude that in choosing the term *party*, the Legislature intended to include participants at a meeting. The term *party* in the writ of review statute, section 1421 of title 5, is not anachronistic. *See* V.I. CODE ANN. tit. 3, § 530a (2005 Supp.) (recent legislation using the terms "any party aggrieved"). Section 1421, although adapted from parallel codes of 1921,[11] still has the same, plain meaning today: the party contemplated is the primary litigant, or focus of the proceeding.

In support of its argument that it was a party through its participation, Petitioner cites *Strawberry Hill 4 Wheelers v. Bd. of Comm'rs for County of Benton*, 601 P.2d 769 (Or. 1979) from the Supreme Court of Oregon, a jurisdiction with a similar writ of review statute in section 34.020 of the Oregon Revised Statutes.[12] Petitioner refers to this case because the Virgin Islands Writ of Review Chapter purportedly has it origins in the

---

[11] The language of the Virgin Islands writ of review chapter was derived from the Alaska Territorial Code of 1913. *Burch v. Burch*, 2 V.I. 559, 570 (3d Cir. 1952). Sections 1 through 10 of chapter 52 of title III were incorporated into sections 1421 to 1423 of title 5 of the Virgin Islands Code. 1921 ST. C. CODE, Title III, ch. 52, §§ 1-10; V.I. CODE ANN. Tables (2005). Later, sections 1, 3 and 5 through 9 of the 1921 version of the writ of review statute were removed as redundant, due to coverage of the procedure within the Court's rules. The fact that the language of section 1421 including the term *party* remains intact, in spite of the fact that parts of Superior Court Rule 15(a) are potentially duplicative, suggests that the Legislature intended the statute's limited scope to remain, and prevail.

[12] The Oregon statute provides:

Except for a proceeding resulting in a land use decision or limited land use decision as defined in ORS 197.015, for which review is provided in ORS 197.830 to 197.845, or an expedited land division as described in ORS 197.360, for which review is provided in ORS 197.375 (8), any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors, as provided in ORS 34.010 to 34.100, *and not otherwise*. Upon a review, the court may review any intermediate order involving the merits and necessarily affecting the decision or determination sought to be reviewed.

OR. REV. STAT. § 34.020 (2003) (emphasis added)

1862 Code of Oregon and thus, it believed that the Oregon court's reasoning would be instructive of the Legislature's intent in section 1421.[13] Notably, where a Virgin Islands statute is patterned after a statute from another jurisdiction, the borrowed statute shall be construed to mean what the highest court from the borrow statute's jurisdiction, *prior* to the Virgin Islands enactment, construed the statute to mean. *See Berkeley v. West Indies Enterprises, Inc.*, 10 V.I. 619, 625, 480 F.2d 1088, 1092 (3d Cir. 1973) (discussing provisions of Workers' Compensation statutes borrowed from Puerto Rico). Since *Strawberry Hill*'s construction of Oregon's writ of review provision is of a far more recent vintage, however, the decision is merely persuasive.

In the *Strawberry Hill* case, the Supreme Court of Oregon was primarily concerned with determining whether the action in question—vacating a road—was a quasi-judicial or quasi-legislative function. *See Strawberry Hill 4 Wheelers*, 601 P.2d at 773. If the county function was judicial, a writ of review would be permissible as it would be one of the types of actions that would qualify under section 34.020 of the Oregon Revised Statutes (similar to section 1421 of title 5 of Virgin Islands Code); if legislative, the action would not be subject to judicial review. Along with identifying the nature of the action, the Oregon Supreme Court applied a test for determining who would qualify as a party, because as it stated, who is a party was not "apparent when a local government performs a 'judicial or quasijudicial [sic] function.'" *Strawberry Hill 4 Wheelers*, 601 P.2d at 779.

To begin the analysis, the Oregon Supreme Court presupposed that persons statutorily entitled to notice by mail of the vacation of the road and those who file proposals were "statutory parties." *Id.* The court devised a test because it concluded that "those are not necessarily the only parties." *Id.* To the contrary, because there was a public notice requirement for the vacation of roads—mandating a posting at the county

---

[13] The Oregon Code in question was purportedly the source for Alaska Territorial Code of 1913, as by the Organic Act of 1884, the laws of Oregon were made applicable to the Territory of Alaska. *See generally Moore v. Rennick*, 1 Alaska 173, 176 (D. 1901). The language of the Writ of Review statute then in existence in Oregon and applied in *Moore* in Alaska, does not appear to differ markedly from the writ of review provisions contained in the 1921 Codes of St. Croix, St. John and St. Thomas. As discussed in note 11, the current language of sections 1421-23 is different, as the procedural parts were removed due to coverage in the District (now Superior) Court Rules.

seat, a posting at the vicinity of the road, and the consideration of objections to the decision to vacate the road—and because seeking the writ was deemed by statute as the exclusive means of judicial review, the Court concluded that the framework contemplated a right to judicial review by persons who were not "statutory parties." *Id.* Thus, a test was articulated to discern between mere participants and those who possessed a sufficient stake in the outcome to be declared parties as intervenors under section 34.020 of the Oregon Revised Statutes. The test in *Strawberry Hill* inquired whether a person "suffered an identifiable injury to an interest of some substance, and either that he participated in some form in the proceeding before the county court or that he was entitled to participate but failed to do so for lack of proper notice or other reasons beyond his control." *Strawberry Hill 4 Wheelers*, 601 P.2d at 779 (citations omitted).

Resorting to this test is inappropriate in the instant matter, as the only party to the proceeding in question is ASC, the applicant for the CON. The CON process, of which the September 10, 2004 meeting was a small part, was not akin to the county-business, public hearing that affected large numbers of landowners in *Strawberry Hill*. The presence of a large number of what the *Strawberry Hill* court called "statutory parties" due to the statutory requirement of notice by mail to the landowners whose property adjoined the road, and the public posting requirement intended to notify other landowners who used the road, make *Strawberry Hill* distinguishable. There, the dispute involved a road and affected not only the adjoining landholders but other free holding estate owners who used the road for egress and ingress. In the case at hand, the fact that the Commissioner of Health permitted public comment from June 2004 to October 2004 does not equate with a statutorily mandated public posting requirement described in *Strawberry Hill*. The CON framework in the Virgin Islands, as outlined within title 19 of the Code, only requires notice and the opportunity to be heard for the applicant. *See* 19 V.I.C. § 226. Petitioner was not a statutory party, nor was it deemed a party as an intervenor before the Commissioner of Health by a September 1, 2004 letter inviting them to present the adverse affects of ASC's facility on the Hospital.

Furthermore, the writ of review provisions in this matter, unlike the statutory framework in *Strawberry Hill* for vacating the road, are not

limited by statute as the exclusive means for challenging the issuance of the CON.[14] The expansive definition of the term *party*, urged by the Petitioner based on *Strawberry Hill* as an indication of clear legislative intent, is not warranted by the current facts. Such an argument might be more apt, if instead, the Legislature had employed the term *person*. But, the Legislature did not. The stark contrast with other Code provisions involving these two terms is illuminating.

The Legislature's common usage of the terms "aggrieved persons" in circumstances where a broad pool of challengers is contemplated and intended bolsters this conclusion. In title 12, the Legislature purposefully employed the terms "any person aggrieved" to permit appeals from the determinations of the Commissioner of the Department of Planning and Natural Resources in the regulation of underground storage tanks and coastal zone management because these decisions impact more than the applicants for certification or permits; these land-use related decisions concern neighbors and other members of the community interested in safeguarding the environment. *See* V.I. CODE ANN. tit. 12, §§ 678, 912 (1998 & Supp. 2005). *See also Kramer v. Gov't of the Virgin Islands*, 8 V.I. 449, 453 F.2d 1246 (3d Cir. 1971) (reading "any person" language from title 29 expansively as compared to the District Court's narrow construction).

Similarly, in title 19, the Legislature attached the "any aggrieved person" language to challenges of determinations made by the Commissioner of Health in the regulation of controlled substances. As with the land-use legislation, drug manufacturers who are not parties might be adversely affected by determinations of the Commissioner and thus, the Legislature permitted challenges by such *persons*. *See* V.I. CODE ANN. tit. 19, § 678 (Supp. 2005). In this limited circumstance, the Legislature allowed a large pool of litigants to challenge a Commissioner of Health determination. This may be juxtaposed with the limited pool of challengers to CON determinations permitted in section 227 of title 19. 19 V.I.C. § 227. Section 227 circumscribes the pool of challengers in a

---

[14] The significance of limiting the challenge to the vacation of a road to the writ of review framework is underscored by the fact that writ of review statute in Oregon, unlike the Virgin Islands provision, prevents parties from seeking injunctive relief. *See State ex rel. City of Powers v. Coos County Airport Dist.*, 119 P.3d 225, 228-29 (Or. Ct. App. 2005) (recognizing "not otherwise" language made the Oregon writ of review statute the exclusive remedy; injunctive relief was not allowed).

statutory appeal by a reference to section 226, a provision that concerns only applicants for a CON who have been aggrieved. 19 V.I.C. §§ 227(a), 226. Notably, not all determinations of the Commissioner of Health may be challenged by merely an aggrieved person.

■ Professor Kenneth Culp Davis's work, the *Administrative Law Treatise*, sheds additional light on the decision of the Legislature to employ the terms "any party to any proceeding" instead of "any person." See KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE § 22.03 (1st ed. 1958) [hereinafter "DAVIS"] (discussing the impact on standing by the choice of language from any party aggrieved, any person aggrieved and any party to any proceeding aggrieved). Though concerned primarily with the federal administrative statutes, Davis's treatise provides that the legislative choices to permit judicial review by "any party to a proceeding" in the Federal Power Act and "any person aggrieved" in the Securities Act, were deliberate. DAVIS, *supra*, § 22.03 at 215. The pool of challengers was intentionally narrowed. The same can be said for the Legislature's endorsement of any party to any proceeding in section 1421. Since the Legislature has employed *party* and *person* to identify the proper challengers to administrative decisions, the use of *party* in section 1421 of title 5 is not the result of inadvertence. It shall be given its plain meaning; thus, only actual litigants are permitted to petition the court for the review of "any proceeding before or by any officer, board, commission, authority, or tribunal." 5 V.I.C. § 1421. This excludes entities, like the Petitioner, who were mere participants.[15] Where the Legislature decided that the interests of aggrieved persons were sufficiently compelling to permit a large pool of

---

[15] Even assuming that participating would suffice to make the Petitioner a party, the Board would still need to clarify its relationship with Rodney Miller. The Board does not address whether CEO Miller's participation was an extension or proxy for the Board's involvement. Without intimate knowledge of the Hospital's corporate structure, it would be difficult for the Court to conclude that CEO Miller spoke for the Board. *See* V.I. CODE ANN. tit. 19, § 244a (Supp. 2005) (the powers and responsibility listed in this provision do not include provisions that establish that as CEO Miller's responsibility). *See also* 19 V.I.C. § 243(g), (j) (providing for the responsibilities of the District Governing Boards). Such a conclusion would be antithetical to general corporate structure, as governing boards are the purveyors of policy, while CEOs oversee day to day operations. A governing board traditionally operates as a check on the authority of a corporation's officers.

challengers, allowances for broader appellate review have already been made. This is not one of those situations.

## C. Superior Court Rule 15 Does Not Expand the Appellate Jurisdiction of the Superior Court

In the alternative, Petitioner argues that its standing and the Court's jurisdiction over the appeal from the Commissioner's action are conferred by the phrase "any aggrieved person" in Superior Court Rule 15(a). Respondents do not address this argument. To support its proposition that the Virgin Islands Writ of Review provisions constitute a broad remedial device, Petitioner cites *Kramer v. Gov't of the Virgin Islands*, 8 V.I. 449, 453 F.2d 1246 (3d Cir. 1971), *Gov't of the Virgin Islands, v. United Indus. Workers of N. Am.*, 38 V.I. 170, 987 F. Supp. 439 (D.V.I. App. Div. 1997), *Equity Inv. Corp. v. Gov't of the Virgin Islands*, 19 V.I. 180 (D.V.I. 1980) and *In re Hodge*, 16 V.I. 548 (Terr. Ct. 1979). These cases do not advance its position that the narrow terms of the writ of review chapter may be overridden by the broad terms of Superior Court Rule 15, let alone confront the conflict between the scope of section 1421 of title 5 and Superior Court Rule 15.[16]

---

[16] In *Kramer*, the Third Circuit Court of Appeals construed a zoning provision which granted appeals to "any person aggrieved" broadly, in allowing an appeal to an intervenor who did not appear before the Board of Appeals. 8 V.I. at 451. In doing so, the Third Circuit Court of Appeals expressly rejected the District Court's use of the writ of review provision by analogy to limit the term *person* to those who were parties before the Board of Appeals. *Id.* The writ of review provisions were held to be inapplicable. *Id.* Thus, *Kramer* provides little guidance for construing the writ of review provisions. In *United Indus. Workers of N. Am.*, the Appellate Division affirmed the Territorial Court decision holding that private arbitration awards were not reviewable under section 1421. 38 V.I. at 176. The court in *United Indus. Workers of N. Am.* also rejected previous broader constructions of the writ of review chapter that had held such arbitrations awards *were* reviewable. *Id.* at 177 n.10. This case highlights the limits of the writ of review chapter, not its breadth. In *Equity Inv. Corp.*, the District Court read the writ of review chapter as a broad remedial device sufficient to conduct a trial de novo. 19 V.I. at 182. Interpreting the writ of review chapter to permit an unarticulated broad scope of review has little sway on whether a court should disregard the express term *party*. Finally, in *In re Hodge*, the Territorial Court permitted a review of a College of the Virgin Islands disciplinary decision under the writ of review statute because there was no appeal or other plain, speedy and adequate remedy. 16 V.I. at 552. *In re Hodge* stands for the limited proposition that a writ of review is permissible if no appeal was otherwise granted in the Code. It is unhelpful here, since an appeal is expressly permitted in title 19.

There are several impediments to Petitioner's argument that Superior Court Rule 15 effectively modifies the substantive scope of section 1421 of title 5 by substituting the term *person* for *party*. First, in the History comment to section 1421 of title 5, the Source and Revision notes convey that this section preserved only section 2 of chapter 52 of title III of the 1921 Codes. Sections 1, 3, and 5 through 9 of the 1921 Codes of St. Croix, St. John and St. Thomas, relating to procedure, were omitted because of their coverage in then District Court Rule 11 (now Superior Court Rule 15). The inference that may be drawn from this information is that Legislature was cognizant of the language of the procedural rule, including its reference to *any person aggrieved* and in spite of the conflict, left the term *party* unchanged.

More importantly, the argument that a court rule should be read to amend a statute on an issue such as subject matter jurisdiction is contrary to the Revised Organic Act. *See generally In re Richards*, 42 V.I. 469, 484-85, 213 F.3d 773, 784 (providing that a court rule that attempts to affect substantive rights is void as violating the Revised Organic Act's separation of powers). A comparison of relevant provisions illustrates that a court rule may not increase the jurisdiction of the Superior Court to sit in an appellate capacity; this power is vested with the Legislature. Revised Organic Act of 1954, §§ 21(c), 22(b), 48 U.S.C. §§ 1611, 1612, *reprinted in* V.I. CODE ANN., Foreword, Preface, Historical Documents, Organic Acts, and U.S. Constitution at 150-158 (1995) (preceding V.I. CODE ANN. tit. 1) [hereinafter "Revised Organic Act"]. Specifically, section 21(c) of the Revised Organic Act provides that

> The rules governing the practice and procedure of the courts established by local law and those prescribing the qualifications and duties of the judges and officers thereof, oaths and bonds, and the times and places of holding court shall be governed by *local law* or *the rules promulgated by those courts*.

Revised Organic Act, *supra*, § 21 at 150 (emphasis added). Both Legislature and the courts established by local law (the Superior Court) may regulate the practice and procedure for the Superior Court.

In contrast, section 22(b) of the Revised Organic Act provides that only the Legislature may vest subject matter jurisdiction in the Superior Court, as it provides, "the District Court of the Virgin Islands shall have

general original jurisdiction in all causes in the Virgin Islands the jurisdiction over which is not then *vested by local law* in the local courts of the Virgin Islands." Revised Organic Act, *supra*, § 21 at 158 (emphasis added). The reference to *local law* indicates that the vesting of jurisdiction is committed to the legislative branch. The opinion in *Moravian School Advisory Board* confirms that the Legislature is entrusted with vesting jurisdiction in the Superior Court. *See Moravian Sch. Advisory Bd.*, 33 V.I. at 284-85, 70 F.3d at 272-73. Thus, Superior Court Rule 15 cannot confer additional jurisdiction over aggrieved persons, beyond that prescribed by section 1421 of title 5.

## IV. CONCLUSION

The instant Petition must be denied because the Board does not qualify as a party under section 1421 of title 5 of the Virgin Islands Code. Superior Court Rule 15 will not be read to expand the subject matter jurisdiction contained in chapter 97 of title 5, the Virgin Islands Writ of Review Chapter. Accordingly, the Board's Petition for Writ of Review will be denied and Respondents' Motion to Dismiss will be granted by accompanying order.